UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ELLIOTT SMALLS,

                Plaintiff,

      - against -

CITY OF NEW YORK; P.O. NGAI; and NYC POLICE
OFFICERS JOHN DOE 1–4,

                Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CV-3017 (RRM) (RLM)

ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff Elliott Smalls brings this action against defendants City of New York (the "City"), Police Officer Ngai ("Officer Ngai"), and four John Doe police officers, alleging claims pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights arising from a 2014 arrest. Before the Court are the City's motion to dismiss the claims against Officer Ngai for insufficient service of process, the City's motion for judgment on the pleadings with respect to Smalls' claim against the City, Smalls' second motion for leave to amend his complaint, and Smalls' request for an extension of time to serve Officer Ngai and the John Doe officers. (Def. Mem. (Doc. No. 45); Pl. Opp'n (Doc. No. 42).) For the reasons set forth below, the claims against Officer Ngai are dismissed pursuant to Federal Rule of Civil Procedure ("Rule") 4(m), the City's motion for judgment on the pleadings is granted in part and denied in part, and Smalls' motion for leave to amend and request for extension of time are both denied.

## BACKGROUND

      Smalls, represented by counsel, filed the original complaint in this action on May 22, 2015. (Compl. (Doc. No.1).) As relevant here, the complaint alleged a number of state and federal causes of action against the City, Officer Ngai, and the John Doe officers. (*Id.* ¶¶ 40–

117.) For the next eight months, Smalls did not file anything with the Court, and he did not serve either of the two named defendants.

On February 16, 2016, without seeking leave to amend, Smalls filed an amended complaint – now the operative pleading – which omitted the state claims and added new allegations in support of his § 1983 claim against the City. (Am. Compl. (Doc. No. 5)).) The only specific factual allegations in the amended complaint relate to a single encounter between Smalls and officers from the New York Police Department ("NYPD") on the night of May 22, 2014. On that date, Smalls alleges that he and his son unsuccessfully attempted to gain access to the apartment where his son was residing along with the son's mother, Winifred Mackins ("Mackins"). (*Id.* ¶¶ 13–17.) The apartment was located in a Brooklyn public housing complex managed by the New York City Housing Authority ("NYCHA"). (*Id.* ¶¶ 13, 15.) Upon arrival at the apartment, Smalls and his son discovered the door chained from the inside, and they were unable to draw the attention of Mackins or anyone else inside. (*Id.* ¶¶ 18–19.) Concerned, they went to the building lobby and contacted the housing police. (*Id.* ¶ 20.) Shortly thereafter, five or six NYPD officers arrived and began to question Smalls and his son. (*Id.* ¶ 21.) With the consent of Smalls' son, the four officers identified as John Does in the amended complaint went to the apartment themselves and were met at the door by Mackins, who reported that she had been sleeping. (*Id.* ¶¶ 22–23)

According to Smalls, the four officers then returned to the lobby and began to verbally abuse him. (*Id.* ¶¶ 24–29, 54.) He alleges one of the officers "berated [him] for trespassing and not being on the lease" and subjected to him to a "tirade" lasting several minutes. (*Id.* ¶¶ 26–27.) He claims that, when he protested, another officer "slammed [him] against the wall and then down to the floor," causing him to become short of breath and causing his arm to emit a

2

"sickening 'crack.'" (*Id.* ¶¶ 28–29.) Smalls is an asthmatic who carries an inhaler, and he alleges that the officers refused to allow him to access his inhaler after he became short of breath. (*Id.* ¶ 29.) Instead, he says, they handcuffed him and transported him first to a medical center, where he was diagnosed with a fractured elbow, and then to the local precinct, where Officer Ngai photographed him and issued him a ticket for criminal trespass in the third degree. (*Id.* ¶¶ 30–32.) Smalls does not allege that Officer Ngai was involved in the night's events in any other respect. (*Id.* ¶ 32.)

After receiving the ticket, Smalls was released. (*Id.* ¶ 33.) Several months later, the county district attorney declined to prosecute his case. (*Id.* ¶ 34.) However, according to Smalls, the injury to his elbow has lingered and continues to cause debilitating pain. (*Id.* at 35–36.)

In the amended complaint, Smalls asserts a variety of § 1983 claims against the City, Officer Ngai, and the John Doe officers. With respect to the City, Smalls alleges that "[t]he acts complained of were carried out by the aforementioned individual defendants . . . pursuant to the[] customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under supervision of said department." (*Id.* ¶ 42; *see also id.* ¶¶ 43, 46, 72.) Smalls alleges that the "aforementioned customs, policies, usages, practices, procedures, and rules" include the following unconstitutional practices:

    a. wrongfully arresting individuals engaged in first amendment protected expression without probabl[e] cause due to perceived lack of respect for the police officer . . . i.e., "contempt of cop" arrests . . . ;

    b. wrongfully arresting individuals engaged in first amendment protected expression without probable cause in attempts to justify excessive uses of force against the same . . . i.e. "contempt of cop," "cover charge" arrests; . . .

    c. [t]he pervasive failure to train, supervise, instruct and discipline police officers with respect to the constitutional rights of

3

> citizens, and encouraging the ensuing misconduct through condoning officers' widespread custom or practice known as "the Blue Wall of Silence," wherein officers deliberately frustrate official and departmental oversight by discouraging officers from reporting violent and unlawful acts of other police officers, and by retaliating against officers who report police misconduct.
>
> d. [t]he policy of unlawfully detaining and arresting NYCHA residents and their guest[s] for the purported offense of trespassing, despite no probable cause that a crime had occurred [; and]
>
> e. [d]espite numerous lawsuits, the NYPD has continued its unconstitutional programs of stairwell patrols, ticketing residents for 'lingering' in lobbies, halls and stairwells, and arresting visitors for trespassing, all amounting to a policy of unlawful racial profiling.

(*Id.* ¶ 73.)

Following this last entry, the amended complaint includes a citation to a 2014 article published in the New York Times entitled "Police Patrols in New York Public Housing Draw Scrutiny." (*Id.* at 13 n.1); J. David Goodman, *Police Patrols in New York Public Housing Draw Scrutiny*, N.Y. TIMES (Dec. 15, 2014), https://www.nytimes.com/2014/12/16/nyregion/amid-calls-for-police-reform-little-scrutiny-of-public-housing-patrols.html (hereinafter Goodman, *Police Patrols*). The article describes, among other things, "a routine patrol tactic used by the [NYPD]" of commencing stops on NYCHA property in order to enforce NYCHA rules. According to the article, these stops often mature into "arrests for trespassing on public housing grounds." Goodman, *Police Patrols*, *supra*. The article notes that, as of its publication date in 2014, these arrests were the subject of a federal lawsuit against the NYPD. *Id.*

One day after Smalls filed the amended complaint, the Honorable Chief Magistrate Judge Roanne L. Mann ordered Smalls to show cause "why the case should not be dismissed with prejudice for lack of prosecution . . . or dismissed for failure to serve defendants with the

summons and complaint within 120 days, pursuant to Rule 4(m)." (Order to Show Cause (Doc. No. 6) at 1.)[1] Several days later, Smalls' attorney responded by letter. In the letter, his attorney acknowledged his failure to serve the parties within 120 days of the filing of the complaint, which he described as an "embarrassing oversight . . . due to counsel's belief that the complaint had been given to a process server" and due to him "thereafter simply los[ing] track of the case." (Feb. 22, 2016 Letter (Doc. No. 7) at 1.) He argued that the court should not dismiss the case. In particular, with respect to Rule 4(m), he argued that "notice to the plaintiff must be given prior to a *sua sponte* dismissal," and that Chief Magistrate Judge Mann's order to show cause was the first such notice Smalls received. (*Id.* at 3–4.) Accordingly, he moved the court for leave to file the amended complaint *nunc pro tunc* and to serve the defendants within fourteen days thereafter. (*Id.* at 1.)

On March 8, 2016, Chief Magistrate Judge Mann granted the motion, deemed the previously filed amended complaint the operative pleading, and directed Smalls to effect service by March 22, 2016. (Mar. 8, 2016 Mem. & Order (Doc. No. 8) at 2.) That same day, Smalls' attorney filed an affidavit of service stating that he had served the City with the summons and amended complaint at 100 Church Street in Manhattan – a building that houses, among other things, the City's Office of the Corporation Counsel. (Aff. of Service (Doc. No. 9) at 1.) He did not file an affidavit of service with respect to Officer Ngai by March 22 or at any time thereafter.

For the next 10 months, the litigation proceeded with only the City having entered an appearance. The City answered the amended complaint, (Answer (Doc. No. 12)), and the parties held an unsuccessful settlement conference, (Jan. 17, 2017 Min. Entry (Doc. No. 18) at 1).

---

[1] Chief Magistrate Judge Mann noted in her order that, at the time Smalls filed his original complaint in May 2015, the time for service permitted by Rule 4(m) was 120 days. (Order to Show Cause at 1.) After this case was filed, Rule 4(m) was amended to require service within a shorter 90-day period after the filing of the complaint. *See* Fed. R. Civ. P. 4, Advisory Committee Notes on the 2016 Amendment.

5

Notably, during this period, on July 7, 2016, Smalls received an initial disclosure which, according to the City, "identified the individuals believed to be the John Doe officers." (Def. Mem. at 9; Sarpong Decl., Ex. G (Doc. No 46-7) at 2–3.) Referencing this disclosure, Chief Magistrate Judge Mann noted that "automatic disclosures have been exchanged" and "pleadings may be amended and new parties added until August 22, 2016." (July 7, 2017 Min. Entry (Doc. No 14) at 1.) Smalls, however, never moved to amend his complaint to identify the four John Doe officers.

In early 2017, Smalls' attorney ceased to represent him. On February 6, 2017, the attorney petitioned the court, *ex parte*, to appoint Deborah Smalls, plaintiff's sister, as a guardian *ad litem*. (Pet. (Doc. No. 22).) Approximately one month later, unable to obtain consent from Deborah Smalls to act as guardian and citing his own irreconcilable differences with Smalls, the attorney moved to withdraw from the representation. (Mot. to Withdraw (Doc. No. 25) at 1.) On March 30, Chief Magistrate Judge Mann granted the attorney's motion. (Mar. 30, 2017 Min. Entry (Doc. No. 30).) Since then, Smalls has proceeded *pro se*.

Over the summer of 2017, Chief Magistrate Judge Mann reopened discovery and held another unsuccessful settlement conference. (July 14, 2017 Min. Entry (Doc No. 34).) The parties proceeded to brief the instant motions, which were filed earlier this year. Prior to the filing of the City's motion for dismissal of the case against Officer Ngai, the City never indicated in its filings that it sought to represent the interests of any individual officer, and the attorney for the City has not entered an appearance on any officer's behalf. Instead, in every filing up to and including the instant motions, the Corporation Counsel has stated that it represents "defendant City of New York." (*See, e.g.*, Answer at 1; Mot. for Extension of Time (Doc. No. 10) at 1; Aug. 11, 2017 Letter (Doc. No. 35) at 1; Def. Mem. at 7.) Meanwhile, between Smalls'

6

attorney's February 22, 2016, letter and the filing of the instant motions over two years later, Smalls did not seek to amend his complaint in order to identify the four John Doe officers, nor did he request any extensions of time to effect service on those defendants or on Officer Ngai.

## DISCUSSION

### I. Claims Against Officer Ngai

Rule 4(m) provides that, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." "[I]f the plaintiff shows good cause for the failure," however, "the court must extend the time for service for an appropriate period." *Id.* In general, good cause means at least "some colorable excuse" for the failure. *Meilleur v. Strong*, 682 F.3d 56, 61 (2d Cir. 2012) (quoting *Zapata v. City of New York*, 502 F.3d 192, 198 (2d Cir. 2007)). "Good cause is generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond [his] control." *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 597–98 (E.D.N.Y. 2013) (quoting *Beauvoir v. U.S. Secret Serv.*, 234 F.R.D. 55, 56 (E.D.N.Y. 2006)).

Applying these principles to plaintiffs represented by counsel, the Second Circuit has explained that "[a]ttorney error does not constitute good cause." *Counter Terrorist Grp. U.S. v. N.Y. Magazine*, 374 F. App'x 233, 235 (2d Cir. 2010) (summary order) (citing *McGregor v. United States*, 933 F.2d 156, 159–60 (2d Cir. 1991)); *see also Harper v. City of New York*, No. 09-CV-5571 (JG) (SMG), 2010 WL 4788016, at *6 (E.D.N.Y. Nov. 17, 2010) (citation omitted) ("Only counsel's oversight or disregard of Rule 4's requirements can explain [plaintiff's] failure to serve [defendant]. Neither constitutes good cause within the meaning of Rule 4(m)."), *aff'd*,

424 F. App'x 36 (2d Cir. 2011). Even the narrowest miscalculations or mistakes by counsel, however honest, are not a basis for an extension of time. *See, e.g.*, *Counter Terrorist Grp. U.S.*, 374 F. App'x at 235 (attorney miscalculated the period to effect service "by several days").

Similarly, with respect to *pro se* plaintiffs, neither mistake nor plain ignorance constitutes good cause. *See, e.g.*, *Jordan*, 928 F. Supp. 2d at 598 (noting that a plaintiff's *pro se* status alone "is no excuse for failure to serve the defendant properly and does not automatically amount to good cause for failure to serve within the time allotted by Rule 4(m)" (citation omitted)). "[I]gnorance or confusion, even in the case of a *pro se* plaintiff, do not constitute good cause." *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 322 (S.D.N.Y. 2016) (citing *Ladner v. Proportional Count Assocs., Inc.*, No. 96-CV-2190 (ILG), 2001 WL 1328443, at *2 (E.D.N.Y. Sept. 17, 2001)).

In this case, the parties agree that neither Officer Ngai nor any of the John Doe officers has been served. (Def. Mem. at 10; Pl. Opp'n at 1–2.) Although Smalls did eventually serve the City, this "was not adequate to serve the individual officers." *Carl v. City of Yonkers*, No. 04-CV-7031 (SCR), 2008 WL 5272722, at *4 (S.D.N.Y. Dec. 18, 2008) (holding that service at the Corporation Counsel's office does not constitute service on individual officers), *aff'd*, 348 F. App'x 599 (2d Cir. 2009). *See generally* Fed. R. Civ. P. 4(e) (setting out the permissible methods of service upon individuals within the United States).

As for the notice required before a dismissal pursuant to Rule 4(m), Smalls has already received it. Over two years ago, Chief Magistrate Judge Mann ordered him to show cause why he had failed to effect service on Officer Ngai and the other defendants. (Order to Show Cause at 1.) His attorney at the time acknowledged that this constituted the notice required by Rule

4(m). (Feb. 22, 2016 Letter at 1.) Nevertheless, neither the attorney nor Smalls, later representing himself *pro se*, has since attempted to serve Officer Ngai.

While this failure could be excused upon a showing of good cause, Smalls does not make any such showing. In his opposition, he argues only that he relied on his attorney, who should have known to effect service. (Pl. Opp'n at 1.) In this, Smalls is correct. His attorney's actions were ill-considered: for over nine months after filing the complaint, no defendants were served. Only after prodding from Chief Magistrate Judge Mann did his attorney recognize this problem, which he characterized as an "embarrassing oversight." (Feb. 22, 2016 Letter at 1.) But even then, he only served the City. (Aff. of Service at 1.) The attorney continued to represent Smalls for another year, participating in discovery and settlement negotiations. (*See* Jan. 17, 2017 Min. Entry at 1.) In July, the attorney received disclosures that the City claims included the names of the John Doe officers. (Sarpong Decl., Ex. G at 2–3.) Throughout all of this, over the course of 22 months, the attorney never sought to amend the complaint to identify the John Doe officers, and he never effected service on any of the defendant officers, including Officer Ngai.

As unfortunate as this all may be for Smalls, though, such "[a]ttorney error does not constitute good cause." *Counter Terrorist Grp. U.S.*, 374 F. App'x at 235. Nor, although he does not point to it, does Smalls' current *pro se* status change the calculus. *See, e.g.*, *Jordan*, 928 F. Supp. 2d at 598. Interpreting the record favorably to Smalls, the most it indicates is that a combination of attorney error and his own ignorance are the reasons for the continued failure of service. The law is clear that neither one establishes good cause. *See Counter Terrorist Grp. U.S.*, 374 F. App'x at 235; *Cassano*, 186 F. Supp. 3d at 322 (holding *pro se* ignorance does not constitute good cause).

This is not the end of the matter, as "[a] district court also 'has discretion to enlarge the 120-day period for service, even in the absence of good cause.'" *Frederick v. City of New York*, No. 13-CV-897 (MKB), 2016 WL 8711395, at *6–8 (E.D.N.Y. Mar. 25, 2016) (quoting *Frankenberger v. Firth Rixson, Inc.*, 565 F. App'x 37, 38 (2d Cir. 2014)); *see also Zapata*, 502 F.3d at 196. In determining whether a discretionary extension is appropriate in the absence of good cause, courts in this Circuit generally consider the equities between the parties. *See, e.g.*, *Mares v. United States*, 627 F. App'x 21, 23 (2d Cir. 2015) (summary order); *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 420 (S.D.N.Y. 2013). Factors relevant to this analysis include "(1) whether any applicable statutes of limitations would bar the action once re-filed; (2) whether the defendant[s] had actual notice of the claims asserted in the complaint; (3) whether defendant[s] attempted to conceal the defect in service; and (4) whether defendant[s] would be prejudiced by extending plaintiff's time for service." *Vaher*, 916 F. Supp. 2d at 420 (quoting *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010)).

Additionally, courts consider whether, even though plaintiff cannot show good cause, there is any "cognizable excuse for the delay." *Zapata*, 502 F.3d at 199. Prolonged attorney neglect is not such an excuse. *See, e.g.*, *id.* (upholding the district court's refusal to extend time where the represented plaintiff "made no effort to effect service within the service period" and "neglected to ask for an extension within a reasonable period of time"); *Harper*, 2010 WL 4788016, at *6 ("After considering the equities, I see no reason to [extend the period for service] where the need for the extension results entirely from counsel's neglect and the request for it came only after the time for service expired, in response to a motion to dismiss."); *see also Carl*, 2008 WL 5272722, at *7. Moreover, a failure to offer a cognizable excuse can be dispositive. "[T]he Second Circuit has stated clearly that even if the balance of hardships favors the plaintiff

a district court may still decline to excuse a failure to timely serve the summons and complaint where the plaintiff fails to advance some colorable excuse for neglect." *Vaher*, 916 F. Supp. 2d at 420–21 (citing *Zapata*, 502 F.3d at 198 & n.7; *Bogle–Assegai v. Connecticut*, 470 F.3d 498, 509 (2d Cir. 2006)).

In this case, Smalls does not point to any cognizable excuse for his failure to effect service beyond his attorney's neglect. As already explained at length, his attorney had ample time to serve Officer Ngai during the 22 months when he represented Smalls, but he did not. As the attorney himself admitted, his failure during the first nine-plus months of this period was due to an "embarrassing oversight." (Feb. 22, 2016 Letter at 1.)

The record does not reveal what, if anything, Smalls' attorney shared with Smalls upon the termination of his representation, but it appears that Smalls was not aware of the defect in service until the instant motions were filed. (*See* Pl. Opp'n at 1–2.) This accounts for another year without service, and it, too, is attributable to his attorney's neglect. Smalls' ignorance as a *pro se* plaintiff was also undoubtedly a factor, but this alone is not enough of an excuse to overcome the weight of his attorney's errors. *See Carl*, 2008 WL 5272722, at *7 (plaintiff's inability to effect service while *pro se* "is counterbalanced by the fact that . . . while represented by counsel, [plaintiff] made no further effort to serve the individual defendants or to ascertain their status in the case").

Certainly, neither the Court nor the defendants shares any responsibility for the delay: Chief Magistrate Judge Mann reminded Smalls' attorney of his service obligations in February 2016, and there is no evidence that any of the defendants sought to conceal the continuing defect in service. *See Vaher*, 916 F. Supp. 2d at 420 (in balancing the equities, considering whether defendants concealed defective service). In the nine months before the City was served, there

was nothing for defendants to conceal, as there is no evidence any of them knew of the case's existence. (Feb. 22, 2016 Letter at 1.) After the City was served, and up to and including present motion practice, it never once purported to represent the interests of Officer Ngai or any other officer. In all of its court filings, Corporation Counsel clearly identified itself as representing "defendant City of New York." (*See, e.g.*, Answer at 1; Mot. for Extension of Time at 1.)

Consideration of the balance of hardships does not change this analysis. Smalls and Officer Ngai both stand to be meaningfully prejudiced by an adverse result. For Smalls, the statute of limitations on all of his claims has long since expired. *Cf. De La Rosa v. N.Y.C. 33 Precinct*, No. 07-CV-7577 (PKC) (KNF), 2010 WL 1737108, at *7 (S.D.N.Y. Apr. 27, 2010) ("With respect to the first factor, courts often consider the fact that the statute of limitations has run on a claim as favoring the plaintiff."). "A Section 1983 claim ordinarily 'accrues when the plaintiff knows or has reason to know of the harm.'" *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)). The statute of limitations on all of Smalls' § 1983 claims, other than that for malicious prosecution, began to run on May 22, 2014, when the events giving rise to those claims occurred. (Compl.) The statute of limitations on his malicious prosecution claim began to run when the district attorney declined to prosecute him on August 23, 2014. *See Spak v. Phillips*, 857 F.3d 458, 462 (2d Cir. 2017) ("In malicious prosecution suits under Section 1983, the statute of limitations begins to run when the prosecution terminate[s] in the plaintiff's favor." (internal quotation marks omitted) (citations omitted)). "Section 1983 actions filed in New York are . . . subject to a three-year statute of limitations." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013). Therefore, the statute of limitations for all but one of Smalls' claims expired on May 22, 2017, and the statute

of limitations for the malicious prosecution claim expired on August 23, 2017. Dismissal of these claims at this juncture will effectively bar recovery against Officer Ngai.

If the time for service is extended, however, Officer Ngai could find himself in litigation over events alleged to have occurred over four years ago. (Def.'s Mem. at 17.) "It is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action . . . ." *Zapata*, 502 F.3d at 198.

Whether or not time is extended, one party will suffer prejudice. But only Smalls and his attorney are responsible for creating this predicament, and "no weighing of the prejudices between the two parties can ignore that the situation is the result of the plaintiff's neglect." *Zapata*, 502 F.3d at 198. Accordingly, this Court declines to exercise its discretion to grant a second extension of time to serve Officer Ngai. Smalls had 120 days when he initiated the suit. He had another 186 days after Chief Magistrate Judge Mann granted a first extension in March 2016. (Mar. 8, 2016 Mem. & Order.) He will not now be given another extension, amounting to well over 1,000 days beyond the period for service contemplated by the Federal Rules. His claims against Officer Ngai are dismissed without prejudice pursuant to Rule 4(m).

## II.     The City's Motion for Judgment on the Pleadings

With respect to the remaining claims, the City moves for judgment on the pleadings pursuant to Rule 12(c). "In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Alcantara v. Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan*, 751 F.3d 71, 75 (2d Cir. 2014) (quoting *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004)). As in the 12(b) context, the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as

13

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Long v. Parry*, 679 F. App'x 60, 63 (2d Cir. 2017) (summary order).

A municipality is liable under § 1983 only if it "itself 'subjects' a person to a deprivation of rights or 'causes' a person to be subjected to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)); *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). In other words, municipalities are liable only for "their own illegal acts" – they are not vicariously liable for the actions of their employees. *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (citing *Monell*, 436 U.S. at 66–683). Accordingly, plaintiffs seeking to impose § 1983 liability on governments must generally "prove that 'action pursuant to official municipal policy' caused their injury." *Connick*, 563 U.S. at 60–61 (quoting *Monell*, 436 U.S. at 691). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Id.* at 61 (citing *Pembaur*, 475 U.S. at 480–81; *Monell*, 436 U.S. at 691; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)).

To survive a motion pursuant to Rules 12(b)(6) or 12(c), a plaintiff cannot merely allege the existence of a municipal policy or custom, but "must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. N.Y.C.*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citing *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)); *see also Zherka v. City of New York*, 459 F. App'x 10, 12 (2d Cir. 2012)

(summary order); *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995). Boilerplate allegations that "the City 'fail[ed] to adequately [ ] discipline[ ] and supervise' employees and 'fail[e]d to promulgate and put into effect appropriate rules and regulations applicable to the duties and behavior' of its employees . . . [are] insufficient to raise an inference of the existence of a custom or policy.'" *Bradley v. City of New York*, No. 08-CV-1106 (NGG), 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) (citations omitted); *see also Duncan v. City of New York*, No. 11-CV-3826 (CBA) (JO), 2012 WL 1672929, at *3 (E.D.N.Y. May 14, 2012).

Smalls' amended complaint advances several theories of *Monell* liability. As to one, it adequately states a claim: it alleges that Smalls was deprived of his rights when NYPD officers, without evidence he committed a crime, arrested him on NYCHA property and subsequently cited him for criminal trespass. (Am. Compl. ¶ 73.) It asserts that this arrest was executed pursuant to the NYPD's "unconstitutional" "policy of unlawful detaining and arresting NYCHA residents and their guests for the purported offense of trespassing, despite no probable cause that a crime had occurred." (*Id.*) In support of this general allegation, the amended complaint references a New York Times article describing the policy. (*Id.* n.1.); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("For purposes of [Rule 12(b)], 'the complaint is deemed to include . . . any statements or documents incorporated in it by reference.'" (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995))). The article states that the police stops that often lead to arrests for trespassing on NYCHA property are "routine," and notes that, as of 2014, such arrests were the subject of a lawsuit against the NYPD. Goodman, *Police Patrols*, *supra*.

Accepting as true all allegations in the amended complaint and drawing all reasonable inferences in Smalls' favor, these allegations support, "at least circumstantially," the inference

15

that the City engages in the practices or policies alleged. *Santos*, 847 F. Supp. 2d at 576; *see also Guerrero v. City of New York*, No. 16-CV-516 (JPO), 2017 WL 2271467, at *3 (S.D.N.Y. May 23, 2017) (quoting *Zherka*, 459 F. App'x at 12). The allegations are therefore sufficient to state a *Monell* claim. *See Iqbal*, 556 U.S. at 678; *Alcantara*, 751 F.3d at 75.

Smalls' other theories of *Monell* liability fail for various reasons. The only other policy or practice alleged with any specificity is the NYPD's regular ticketing of NYCHA residents and visitors for "lingering" in common areas. (Am. Compl. ¶ 73.) This policy is also detailed in the New York Times article. Smalls, however, does not allege that *he* was arrested for lingering. As such, that policy or practice cannot be the basis for municipal liability. *See City of Canton*, 489 U.S. at 385 (requiring a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation").

Other policies or practices alleged in the amended complaint include "wrongfully arresting individuals . . . due to perceived lack of respect for the police," "wrongfully arresting individuals engaged in first amendment protected expression," the "pervasive failure to train, supervise, instruct and discipline police officers with respect to the constitutional rights of citizens," and "the Blue Wall of Silence." (Am. Compl. ¶ 73.) The amended complaint does not allege that any of these policies is official. *See Connick*, 563 U.S. at 60–61 (requiring "action pursuant to official municipal policy").

Smalls could alternatively establish *Monell* liability by showing that these policies or practices are so "persistent and widespread as to practically have the force of law," *id.* at 61, but the amended complaint fails equally in this regard. Outside of its conclusory allegations that the NYPD's failure to train is "pervasive," and the "Blue Wall of Silence," is "widespread," the amended complaint says nothing about prevalence. (Am. Compl. ¶ 73.) Indeed, it provides no

factual enhancement at all. *See Santos*, 847 F. Supp. 2d at 576 (requiring a *Monell* complaint to "allege facts tending to support . . . an inference that such a municipal policy or custom exists."). Notably, it does not allege "any details about other instances of police misconduct . . . which would suggest a pattern or practice of abuse, nor [doe]s [it] identif[y] any reports or investigations which suggest deficiencies in" the NYPD's approach to training, reporting misconduct, or respecting First Amendment expression. *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 536–37 (S.D.N.Y. 2012). With respect to the alleged failure to train, in particular, the amended complaint neither "identif[ies] a specific deficiency in the city's training program [nor] establish[es] that that deficiency is 'closely related to the ultimate injury.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (quoting *City of Canton*, 489 U.S. at 391).

All told, Smalls' allegations of these policies or practices, "without any facts suggesting [their] existence, are plainly insufficient." *Moore v. City of New York*, No. 08-CV-8879 (PGG), 2010 WL 742981, at *6 (S.D.N.Y. Mar. 2, 2010) (quoting *Missel v. Cty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009)). Insofar as the amended complaint asserts § 1983 causes of action against the City arising from these policies or practices, they are dismissed for failure to state a claim. *See Iqbal*, 556 U.S. at 678; *Alcantara*, 751 F.3d at 75.

### III. Leave to Amend

In his opposition, Smalls moves for leave to amend his complaint to name the John Doe officers. As discussed, *supra* Part II, the statute of limitations on Smalls' claims against the John Doe officers has long since expired. "'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued. John Doe substitutions, then, may only be accomplished when all of

17

the specifications of Fed. R. Civ. P. 15(c) are met." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993)). Rule 15(c), in turn, permits claims against a substituted party to relate back to the time of earlier pleadings only if, within the Rule 4(m) period for service, the parties "to be brought in by amendment . . . received such notice of the action that [they] would not be prejudiced" and "knew or should have known that the action would have been brought against [them], but for a mistake concerning . . . identity." Fed. R. Civ. P. 15(c).

Here, there is no indication that either of these conditions was met during the 4(m) period or in the years since it expired. In contrast to Officer Ngai, with whom the City admits discussing the lawsuit, there is nothing in the record to suggest that the John Doe officers had notice of the case. From its inception, the case has not involved them. Indeed, their identities are still unknown, the only evidence of such being a disclosure from the City prepared in the summer of 2016. Claims against these officers, even if they were to be identified at this late date, could not be said to relate back to Smalls' complaint within the meaning of Rule 15(c). Given this, and given that Smalls' claims against the John Doe officers are otherwise time-barred, *see* Fed. R. Civ. P. 15(c), any amendment for the purpose of naming the officers would be futile. Accordingly, Smalls' motion to amend is denied. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that "futility of amendment" is grounds to deny leave to amend).

## CONCLUSION

Smalls' request for an extension of time to serve Officer Ngai is denied, and his claims against Officer Ngai are dismissed pursuant to Rule 4(m). Smalls' *Monell* claim against the City based on the NYPD's alleged policy or practice of arresting visitors to NYCHA properties for trespassing may proceed. To the extent Smalls brings claims based on other theories of *Monell*

liability, they are dismissed. Accordingly, the City's motion for judgment on the pleadings (Doc. No. 44) is granted in part and denied in part. Lastly, Smalls' motion for leave to amend his complaint to name the John Doe officers is denied. This case is recommitted to Chief Magistrate Judge Mann for any further discovery and for pretrial arrangements.

The Clerk of Court shall send a copy of this Memorandum and Order to Smalls at the address listed for him and note the mailing on the docket.

SO ORDERED.

Dated: Brooklyn, New York
      March 18, 2019

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge